8224

CATHCART, ADMR., v. MATTHEWS.

1. REAL ESTATE—ADVERSE POSSESSION—LIMITATION OF ACTIONS—TITLE.— One in possession of land before the Code of 1870 could acquire title by adverse possession in ten years.

2. IBID.—IBID.—IBID.—The disability of lunacy does not stop the running of the statute in favor of one going in possession of land under claim of title while *compos mentis.* The possession of another under such lunatic would enure to his benefit.

3. IBID.—IBID.—TITLE.—One in possession of land under claim of title cannot be put to proof of his title by one who invades his possession as a trespasser or squatter.

Mr. JUSTICE WOODS, *with whom concurs* Mr. JUSTICE WATTS, *thinks it inferable from the evidence that the possession of the deceased in this case was adverse to that of the trustee after conveyance by him in breach of the trust, and that by such possession he acquired a good title.*

4. REHEARING refused.

Before ERNEST MOORE, special Judge, Fairfield, October, 1909. Reversed.

Action by Wm. M. Cathcart, administrator of John H. Cathcart, against Jno. P. Matthews. Plaintiff appeals.

*Messrs. Hanahan & Traylor* and *Glenn W. Ragsdale,* for appellants. *Mr. Hanahan* cites: *Title acquired by adverse possession can be asserted affirmatively:* 50 S. C. 457; 39 S. C. 14; 45 S. C. 317. *Equitable trusts are not within the statute of limitations:* 7 John. Ch. 89; 83 Am. Dec. 173; 40 S. C. 178. *Regular mercantile books are admissible as evidence:* 1 N. & McC. 186; 2 Bay 172; 2 Wig. on Ev., sec. 1523, 1525.

*Messrs. McDonald & McDonald,* contra, cite: *Entries in mercantile books not made in the ordinary course of business are not admissible as evidence:* 1 N. & McC. 130, 186; 4 McC. 76; 1 Ell. on Ev., sec. 467; 1 Whar. on Ev., secs. 243, 244, 247; 9 Ency. 931; 77 Ill. 18; 11 N. J. L. 189; 131 N. Y. 169; 176 Penn. 476; 52 L. R. A. 703. *Plaintiff must prove legal title to recover suit:* 1 N. & McC. 369; 79 S. C. 743; 88 S. C. 180. *Recording is presumptive of delivery:* 22 S. C. 361; 38 S. C. 397; 81 S. C. 455. *Presumption of possession follows legal title:* 25 S. C. 524; 48 S. C. 28; 71 S. C. 330; 65 S. C. 536. *If the trustee is barred so is the cestui trust:* 40 S. C. 168; 50 S. C. 127; 60 S. C. 172; 66 S. C. 293; 72 S. C. 319; 78 S. C. 154, 324. *Presumption of a*

*grant begins with commencement of possession:* 2 Rich. 19;
5 Rich. 459; 71 S. C. 521. *Lunacy will not rebut presumption of grant:* 17 S. C. 482; 4 Rich. L. 103. *After twenty years it is presumed the trustee was instructed to convey according to terms of trust deed:* Riley's Eq. 102; 2 Rich. Eq. 99; 4 Rich. Eq. 152; 3 Hill 336; 1 Hill Ch. 380; 11 Rich. Eq. 372; 31 S. C. 91; 72 S. C. 320; 80 S. C. 110; 36 S. C. 197; 20 S. C. 52; 11 Rich. 430; 14 S. C. 103; 120 U. S. 537; 175 U. S. 510. *Possession to be adverse must be continuous:* 1 McM. 357; 6 Rich. 63; 8 Rich. 42; 14 S. C. 189.

The opinion in this case was filed on May 2, but remittitur held up on petition for rehearing until

May 30, 1912. The opinion of the Court was delivered by

Mr. Chief Justice Gary. This is an action by the administrator, of the estate of John H. Cathcart, deceased, to recover rents and profits, for the use of a certain storehouse and lot in Winnsboro.

The defendant denied that the legal title was in John H. Cathcart, and pleaded the presumption of a grant, and adverse possession.

It appears from the testimony, that Richard Cathcart became feeble in mind, about the year 1865, and that he executed a power of attorney, whereby he empowered John H. Cathcart, to sell all the lands, of which he was then seized.

In pursuance of said power of attorney, the lot described in the complaint, was conveyed to Margaret J. Shaw, on the second day of November, 1867; and, on the same day, she executed an instrument of writing, under her hand and seal, and in the presence of two witnesses, in which she made this declaration: "I hereby acknowledge that, I hold the real estate conveyed to me this day, for a full and valuable consideration, paid by John H. Cathcart, subject to such uses as

John H. Cathcart may direct; hereby binding myself, to make such conveyances, as John H. Cathcart may at any time require of me."

On the twenty-second day of June, 1874, the said Margaret J. Shaw, conveyed to Elizabeth Cathcart; and, on or about the 16th of October, 1884, Elizabeth Cathcart conveyed to the defendant, John P. Matthews.

All the deeds of conveyance were duly recorded, but the declaration of trust, was not placed on record.

Under proceedings in the probate court, John H. Cathcart was adjudged *non compos mentis,* and sent to the hospital for the insane, on the 25th of June, 1874.

In May, 1875, he was discharged therefrom, and upon his petition, the commission in lunacy was superseded and set aside, by an order of the probate court.

During the year 1883, he was again adjudged a lunatic, and sent to the hospital for the insane, where he remained until his death in 1908.

At the close of the testimony, the defendant's attorneys made a motion for the direction of a verdict, upon the ground, "that the evidence shows, that the legal title was not in plaintiff's intestate, at the time title was made to the defendant."

After hearing the motion his Honor ruled as follows: "The Court has determined, that there is no evidence to go to the jury here, to support the allegations of the complaint, of legal title to the land in question, in plaintiff's intestate, at the time of the conveyance to the defendant, and, therefore, has determined to direct the verdict of the jury, for the defendant."

We have quoted the language of the motion, and of the ruling of his Honor, the presiding Judge, in order to show the exact ground, upon which the verdict was directed.

There are two reasons why there was error, in directing the jury to render a verdict in favor of the defendant. In the first place, there was testimony tending to show, that

John H. Cathcart commenced to exercise acts of ownership, and to hold possession of the land, openly and adversely to the rights of his trustee, Margaret J. Shaw, prior to the adoption of the Code of Procedure on the first of March, 1870, when the time necessary to acquire title by adverse possession was changed from ten to twenty years; and that he held continuously, openly and adversely, until he was adjudged to be of unsound mind, and was sent to the hospital for the insane in 1883—long enough to acquire title by adverse possession, which is "not only a shield of defense, but is capable of being asserted actively." *Duren* v. *Key*, 50 S. C. 444, 27 S. E. 875.

In the second place, the complaint contains these allegations: That John H. Cathcart took possession of the said house and lot, on the 2d day of November, 1867, and continued in uninterrupted ownership thereof, until the day of his death, in 1908.

That on the　　　day of　　　, 1884, while the said John H. Cathcart, was confined to the hospital for the insane, the said John P. Matthews entered upon the premises of the said John H. Cathcart and began to use the house and lot for the purpose of carrying on a mercantile business.

That the defendant knew, when he entered upon and began to use the premises, that he was entering upon and using the premises of the said John H. Cathcart, and that they had been in the possession, and under the control of the said John H. Cathcart, from the 2d day of November, 1867, up to the very day upon which, the said John P. Matthews entered upon said premises.

It will be observed, that the complaint, not only alleges that John H. Cathcart was the owner of the land, but that he was in possession, and that this possession had been invaded by acts of trespass, on the part of the defendant.

There was testimony tending to prove these allegations, but it was only necessary for the plaintiff to introduce testi-

mony, tending to show that John H. Cathcart was in possession of the premises, and that the defendant invaded this possession, by acts of trespass, in order to cast upon him, the burden of proving, that he had a better title than the plaintiff's intestate.

The rule is thus stated by Mr. Justice Woods, in the case of *Investment Co.* v. *Lumber Co.*, 86 S. C. 358, 68 S. E. 637, 30 L. R. A. (N. S.) 243n: "The important question is thus raised, whether a plaintiff alleging both title and possession, is entitled to recover damages, upon proof of his possession, and the invasion of it by the defendant, without proving also, that he had a perfect title. The question must be answered in the affirmative. One person who finds another, in possession of land can not by seizing the possession or invading it, put him whose possession he seized or invaded, to proof of his title. In such a case possession is *prima facie* evidence of title, and he who invades it, must establish his title. If this were not so, a holder of land could be put to proof of title against the world, by any one who might choose to trespass or squat upon his lands. This conclusion is well supported by authority. When the plaintiff alleges an invasion of his possession, this gives character to the action, as one in the nature of the old action, of *trespass quare clausum fregit.*" In the case of *Turner* v. *Poston,* 63 S. C. 244, 41 S. E. 296, the Court uses this language: "The right of possession is a very sacred one, and the Court will not allow the repose which it gives, to be endangered, by giving improper advantages to a trespasser. If defendant had a good title, he should have resorted to the Courts, when he could have obtained any redress, to which, by law, he was entitled."

We do not deem it necessary, to cite other authorities to show, that the testimony adduced by the plaintiff, cast upon the defendant the burden of proving his title.

Judgment reversed and new trial granted.

Mr. Justice Hydrick *concurs in the result.*

Mr. Justice Woods, *concurring in the result.* The complaint alleges that John H. Cathcart was at the time of his death the owner of the land described in the complaint, and that the plaintiff, as the administrator of his estate, is entitled to recover of the defendant the sum of six thousand dollars as rents and profits. The defendant denied the title of John H. Cathcart, and set up title in himself. The trial was by common consent on the issue of the legal title to the land. The Circuit Judge instructed a verdict for the defendant on this issue, and none of the exceptions raise the question that the plaintiff, as administrator of the estate of John H. Cathcart, might have been entitled to recover rents and profits under the terms of the trust deed, even if the legal title was not in him, but in the trustee. All the equitable issues made by the pleadings were expressly reserved by the Court.

The declaration of trust under which Margaret J. Shaw, the trustee of John H. Cathcart, held the land in dispute, was: "I hereby acknowledge that, I hold the real estate conveyed to me this day, for a full and valuable consideration paid by John H. Cathcart, subject to such uses as John H. Cathcart may direct; hereby binding myself, to make such conveyances, as John H. Cathcart may at any time require of me."

The statute did not execute the use, and the trustee held the legal title. *McCaw* v. *Calbraith,* 7 Rich. 80; *Huckabee* v. *Newton,* 23 S. C. 295; *Ayer* v. *Ritter,* 29 S. C. 135, 7 S. E. 53; *Steele* v. *Smith,* 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939.

On June 22, 1874, the trustee conveyed to Elizabth Cathcart, and on October 16, 1884, Elizabeth Cathcart conveyed to defendant, Matthews. There was no direct evidence that John H. Cathcart directed the execution of the conveyance by the trustee. Hence there was ground for inference by

the jury that the conveyance from the trustee to the grantor of the defendant was not in execution of the trust, but in violation of it. The Court could not hold as a matter of law, therefore, that the defendant had conclusively shown that he had a good conveyance from the trustee.

It is true that any possession by John H. Cathcart should be referred to the trust, and considered to be held under it until conveyance by the trustee in violation of the trust, but if the trustee did convey in violation of the trust, then the possession of John H. Cathcart, after that repudiation of the trust might well be adverse to the trustee and her grantee. 3 Wash. on Real Property, 1991. I do not think the proposition sound that John H. Cathcart could not hold by adverse possession while he was *non compos* or in the lunatic asylum. If any person entered or being already in held under John H. Cathcart while he was a lunatic or in the asylum the possession of such person would enure to the benefit of the lunatic. This is a principle of general recognition. The following are cases in which it was applied in favor of persons under the disability of marriage or infancy: *Sibley* v. *Sibley,* 88 S. C. 184; *Davis* v. *Mitchell,* 5 Yerg. 281; *Killebrew* v. *Mauldin,* 145 Ala. 654; 39 So. 575; 80 Am. S. R. 905. Applying the principle in this case, there was evidence from which the jury might have inferred that John H. Cathcart held the land adversely to the trustee and her grantee for more than the statutory period after the trustee conveyed the property. This being so, it seems to me there was some evidence upon which the jury could have legally based a verdict in favor of the plaintiff on the ground that John H. Cathcart had acquired the legal title to the land by adverse possession.

I am unable to assent to the conclusion stated by the Chief Justice that the Court should have held that, under the facts proved, the defendant had seized upon or invaded the posses-

sion of the plaintiff, and that, therefore, it followed as a legal proposition that the burden was on the defendant to prove his title; for there was evidence from which the jury could have inferred that no one was in possession at the time the defendant obtained his deed and entered, and that, therefore, he did not seize upon or invade the possession of John H. Cathcart.

The entries in the cash book of John H. Cathcart were properly excluded. The entries were not made on a book account kept with the parties concerned, but are mere entries of a declaration by a party in his own favor on his cash book. The person against whom these entries were made is not bound by them.

MR. JUSTICE WATTS *concurs.*

MR. JUSTICE FRASER, *concurring.* I concur in so much of the opinion of the Chief Justice as holds, that there was testimony tending to show that John H. Cathcart was in possession of the land described in the complaint, and that the defendant, Matthews, invaded that possession and that burden of proof was on the defendant to justify that invasion.

I also concur in so much of the opinion of Mr. Justice Woods as holds, that the statute having begun to run in favor of John H. Cathcart, was not suspended during his disability.

Petition for rehearing dismissed by formal order filed May 30, 1912.