# Daly et al. v. Spencer's Committee et al.

(Decided May 17, 1935.)

(As Modified on Denial of Rehearing June 21, 1935.)

20

SANDIDGE & SANDIDGE for appellants.

KIRK & BARTLETT, CARY, MILLER & KIRK and HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Ohio circuit court quieting the title of the committee of Delia Spencer to 75 acres of land in that county, upon which there are 9 producing oil wells. With the suit to quiet title were consolidated two proceedings seeking the approval of oil and gas leases made by two different committees of Mrs. Spencer to two different lessees. The judgment approved the lease by one committee and disapproved that of the other committee.

Both appellants and appellees trace their claims to the property involved to David Duggins and Elvina, Duggins, his wife. David Duggins and Elvina Duggins died several years prior to 1912 intestate, and leaving six surviving children, amongst whom were Delia Duggins Spencer and Sally Jane Duggins Harris. Delia Spencer and her husband, C. F. Spencer, moved onto the 75-acre tract either early in the year 1912, or shortly prior thereto. By a deed dated March 18, 1912, and acknowledged March 14, 1913, the other five children of David and Elvina Duggins conveyed their respective interests in the land to their sister, Delia Spencer. Sally Duggins Harris was at that time married. She signed the deed, but her husband, Joe Harris, did not. Sally Duggins Harris died in 1924 intestate, and survived by five children, all of whom are appellants in this case. In May, 1927, a proceeding was had in the Ohio circuit court whereby Delia Spencer was committed to the Western Kentucky State Hospital for the Insane at Hopkinsville.

On June 23, 1934, C. F. Spencer, upon oral application, was appointed committee for Delia Spencer by the Ohio county court. The only record of this alleged appointment is embodied in a single order of the county court reciting in part:

"Whereas, Delia Spencer, was adjudged a person of unsound mind and an imbecile, and C. F. Spencer was appointed a Committee for said Delia Spencer; thereupon said C. F. Spencer appeared in Court and accepted said appointment. * * *"

No writing was filed setting forth any facts calling for the appointment of the committee, and it is conceded that the adjudication of insanity referred to in the order was the alleged proceeding of May 16, 1927, under which Mrs. Spencer was committed to the asylum at Hopkinsville. On June 25, 1934, C. F. Spencer, as committee for his wife, filed a petition in the Ohio circuit court, under the provisions of section 2031a-2 et seq. of the Kentucky Statutes, for the approval of an oil and gas lease on the 75-acre tract to Mary R. Coombs. The circuit judge approved the lease.

On June 28, 1934, the representative of Mary R. Coombs, lessee, upon hearing that the heirs of Sally Duggins Harris might have a claim to one-sixth interest

in the property, procured an oil and gas lease from all of the children of Sally Duggins Harris, of their claimed undivided interest.

During the time covered by the various maneuvers of the representative of Mary R. Coombs, and prior to the time of the alleged appointment of C. F. Spencer as committee for Delia Spencer, the appellee Kentucky Natural Gas Corporation held what purported to be a lease on the property from the holder of an invalid tax deed and was making preparations to enter on the property and commence drilling. Upon learning of the Coombs lease, a second proceeding was commenced by certain nieces and nephews of Delia Spencer for the appointment of another committee, and this appointment was actually made, in strict conformity to the statutes, on July 24, 1934. Appellee R. R. Riley was appointed as committee, and on the following day executed an oil and gas lease to the Kentucky Natural Gas Corporation. This lease was likewise submitted to the circuit court under section 2031a-2 et seq. of the Statutes, and was approved by the court.

Riley immediately brought this suit to quiet the title of Delia Spencer to the land, to set aside the appointment of C. F. Spencer as her committee, and to cancel the lease from Spencer to Mary R. Coombs. The heirs of Sally Duggins Harris filed an intervening petition, asserting their ownership of an undivided one-sixth interest in the property and asking that their title thereto be quieted. After the issues were made up, a motion was filed by the plaintiffs to restore to the docket the proceeding wherein the circuit court had approved the lease from Spencer to Mary R. Coombs and to vacate the judgment approving the lease. A similar motion was made by the defendants to redocket and vacate the judgment in the proceeding wherein the court had approved the lease from Riley to the Kentucky Natural Gas Corporation. The court restored each of these proceedings to the docket, and consolidated them with the pending suit to quiet title.

Upon final submission, the court held that Delia Spencer was the owner of the entire tract, and that the Harris heirs owned no interest therein; that C. F. Spencer was not the legal committee of Delia Spencer, and his lease to Mary R. Coombs was invalid; that R. R.

Riley was the legal committee of Delia Spencer, and that his lease to the Kentucky Natural Gas Corporation was valid. It is manifest that if the court was correct in deciding that the Harris heirs had no interest and that C. F. Spencer was not the legally appointed committee of Delia Spencer, then the other questions involved become immaterial so far as appellants are concerned, and the judgment of the chancellor will have to be, affirmed.

Delia Spencer took possession of the tract of land in controversy prior to 1912. Unquestionably, a cause of action for the recovery of her undivided interest accrued to Sally Duggins Harris upon the delivery of the deed from her, unsigned by her husband. It is not shown just when the deed was actually delivered to Delia Spencer, but it must have been some time prior to March 6, 1914, the date on which the deed was admitted to record. The fact that Mrs. Harris was a married woman on the date that the deed was delivered does not prevent the *accrual* of her cause of action, even though her coverture may have *tolled* the falling of the bar of the statute until three years after she became discovert. She could have brought a suit to establish her interest at any time during this period. Shively v. Elkhorn Coal Corporation, 217 Ky. 192, 289 S. W. 262; Turner v. Begley, 239 Ky. 281, 39 S. W. (2d) 504. The statement of a contrary rule in Chilton v. Chilton, 217 Ky. 258, 263, 289 S. W. 275, relied on by appellants, was not necessary to a decision of that case and is not supported by reason or authority. At the time of the death of Mrs. Harris in 1923, some, if not all, of her children were of age and free from disability. There was nothing, therefore to prevent the falling of the bar of the statute of limitations upon the expiration of the 15-year period. Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187. The continuity of Mrs. Spencer's possession was not interrupted by her mere temporary absence from the property nor by her forcible commitment to the asylum.

We have been referred to no cases, and have found but two, wherein the courts have had occasion to consider the effect of the insanity of an adverse claimant upon the continuity of his possession. In Freeman v. Funk, 85 Kan. 473, 117 P. 1024, 46 L. R. A. (N. S.) 487, the statement of facts indicates that the adverse holder

was insane for at least a portion of the time during which the prescriptive period ran. The court sustained his title, but did not discuss the effect of insanity on the continuity of his possession. In Cathcart v. Matthews, 91 S. C. 464, 74 S. E. 985, Ann. Cas. 1914A, 36 (second appeal 105 S. C. 329, 89 S. E. 1021), the court held, in a concurring opinion to which three of the five judges subscribed, that where the statute of limitations had begun to run in favor of one in possession it was not suspended by an adjudication that he was non compos and by his confinement in an asylum for the insane, since any person holding or entering under him, while he was insane, would hold possession for his benefit.

In the case at bar the proof indicates that not only did no one enter upon the premises following the commitment of Delia Spencer, but that her household effects continued to remain in her home for many years after the bar of the statute had fallen.

The postulate of appellant's argument lies in the philosophic conception that possession exists because a man has brought the object possessed within the sphere of his *will*. If he has no will, he can have no possession; an *intent* is essential. However well the argument may fit in the realm of metaphysics, it will not withstand the test of practical experience or analogy in law. Certainly a man asleep can hardly be charged with an intention one way or the other, and yet it has never been the law that an adverse claimant must stay awake for fifteen years to effect his possessory title. It may be conceded that an intent to hold adversely must exist when possession is gained, but, once acquired, there is no apparent general ground on which the right should be held to end except upon the manifestation of some fact inconsistent with its continuance. Upon theory, at least, the cases seem to recognize a sort of legal inertia in a possessory right once acquired that requires the added push of some positive action to change its course. A person on becoming insane does not ipso facto lose possession of the property under his dominion any more than does the claimant who sleeps eight hours out of each twenty-four. Mrs. Spencer has continued to be recognized in the neighborhood as the owner of the tract involved throughout all of this time. If we continue with the philosophers and conceive of possession

of property as the manifestation of an intent to exclude others, we have evidence of such an intent here in the very fact that all others have been excluded. It was not until August of 1934, more than twenty years after the statute began to run, that an attempt was made to question her asserted right. There was no attempt to remove any of her furniture or possessions from the premises until years after the bar of the statute had fallen. The property was assessed for taxes in the name of Delia Spencer throughout the entire period. She had an indisputable title to five-sixths of the tract, and claimed like title to the other sixth. We conclude, therefore, that the heirs of Sally Harris have no interest in the property and that their lease to Mary R. Coombs passed nothing.

The appointment of C. F. Spencer, as committee for Delia Spencer, must rest for its validity upon the order of the Ohio county court, dated June 23, 1934, a portion of which is quoted above. It is admitted that there had never been an inquest of a jury prior to C. F. Spencer's application for appointment and that no jury was impaneled at that time. It is furthermore admitted that no petition or affidavit was filed as a basis for the alleged appointment. Appellants, however, seek to justify the appointment and to sustain the jurisdiction of the county court in making it by reference to section 2151 of the Statutes, which was section 3 of article 1, chapter 147, Acts 1891-92-93. They argue that the provisions in section 2151 requiring the inquest of a jury, "as provided in this chapter," before a committee can be appointed, is no longer necessary in *insanity* proceedings because of the repeal of article 2 of the act of 1893 by chapter 54 of the Acts of 1918 (section 42). They say that, as under the act of 1918 a jury might be waived, section 2151 is to that extent modified and that a committee may now be appointed for an insane person (as distinguished from imbeciles and incompetents) without the inquest of a jury. Article 1 of the act of 1893 related entirely to the custody of the persons and estates of non compos individuals, while article 2 contained the general law on the subject of holding insanity inquests. The repeal of the general law as contained in article 2 was not absolute, but there was substituted in lieu thereof, by the repealing statute, another detailed scheme of procedure. If, as appel-

lants contend, a portion of section 2151 was impliedly repealed, the repeal was of the words "as provided in this chapter," and not a repeal of the requirements for the inquest *of a jury* as a condition precedent to the appointment of a committee.

It seems clear that the primary intention of the Legislature in enacting section 2151 was to require the inquest *of a jury,* and not simply an inquest "as provided in this chapter." We construe section 2151 as adopting the general law in regard to insanity inquests rather than the specific provisions of article 2 of the act of 1893. The words, "as provided in this chapter," are merely descriptive of the type of inquest mentioned. It follows that the inquest of a jury referred to in section 2151 is such as existed when the inquest was held or exists at the time that the application for a committee is made. Johnson v. Laffoon, 257 Ky. 156, 160, 77 S. W. (2d) 345. Furthermore, the only basis upon which appellants seek to justify the appointment of C. F. Spencer as a committee without the filing of a written petition is that there had been a previous valid adjudication of insanity under the proceeding of May 16, 1927, which thus authorized the court without more to appoint a committe for the preservation of her estate. The proceeding of May 16, 1927, was attempted to be held under the provisions of the 1918 act (section 272a-16 et seq. of the 1922 Edition of the Statutes). A complete transcript of that proceeding is filed in the record here. It shows that the inquest was held on the same day that the petition was filed; admittedly there was no jury; there was no summons or notice of any kind issued, and the certificate of the physicians appointed to examine Mrs. Spencer gave no indication that her condition was such that it would be unsafe to bring her into court. Almost every safeguard provided by the statute was ignored. Appellants claim, however, that the instant case presents a collateral attack both on the adjudication of insanity and on the order appointing the committee. So far as the proceeding for the appointment of a committee is concerned, that proceeding was held in the county court—a court of limited or special jurisdiction. Facts necessary to confer jurisdiction on it must appear. Crown Real Estate Co. v. Rogers' Committee, 132 Ky. 790, 117 S. W. 275, 136 Am. St. Rep. 202. It is true that we have held:

"If the record is silent, and the statute does **not** require it to speak, evidence aliunde to show a jurisdictional fact in no way impeaches the record."

Louisville Title Co. v. Darnell's Committee, 149 Ky. 312, 148 S. W. 369, 372. Assuming, but not deciding, that evidence aliunde might be introduced to lend efficacy to the order appointing C. F. Spencer as committee, the only evidence adduced is the record of the inquest, which affirmatively shows that there was no jury. Plainly, this evidence is not sufficient to sustain the order appointing a committee, and the fact remains that that order is void. A void judgment is no judgment and may be attacked at any time. Ramsey's Ex'r v. Ramsey, 233 Ky. 507, 26 S. W. (2d) 37. We do not find it necessary to determine whether or not the inquest itself is void, although it may be seriously doubted whether a jury could be waived in such a proceeding. Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478, 1 L. R. A. 610; Sabin v. Commonwealth, 233 Ky. 636, 26 S. W. (2d) 506. As we pointed out above, section 2151 of the Statutes requires the inquest of a jury as a condition precedent to the appointment of a committee.

Finally, it is contended that C. F. Spencer was at least a de facto committee in possession of the office and exercising its functions under color of title. There can be no de facto officer unless there is an office to fill. Coquillard Wagon Works v. Melton, 137 Ky. 189, 125 S. W. 291; Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178. There was no office of committee to be filled at the time of the void appointment of C. F. Spencer.

Persons—even insane persons—are not to be deprived of their liberty or property without due process of law. While there is no hint of bad faith on the part of appellants here, the Star Chamber methods of dealing with the person and property of this unfortunate woman cannot be too severely condemned. Constitutional guaranties are to be honored and not ignored.

Judgment affirmed.