## Revlett v. Revlett et al.

(Decided May 3, 1938.)

(As Corrected on Denial of Rehearing June 24, 1938.)

HUBERT MEREDITH, Attorney General, for appellant.
NEWTON BELCHER for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

The following judgment was entered in the Muhlenberg circuit court on the 25th day of September, 1936:

"That the deed, dated September 11, 1931, from Frank Revlett to L. E. Revlett, and of record in Deed Book 133, page 576, in the office of the county clerk of Muhlenberg County, Kentucky; and the deed from Frank Revlett to L. E. Revlett, dated August 12, 1933, and of record in Deed Book, 135, page 326, in the aforesaid office, as set forth in the petition herein, be and the same are hereby cancelled, set aside and held for naught.

"It is further considered and adjudged by the court that the changes in the insurance policy issued on the life of John Franklin Revlett by the Modern Woodmen of America, dated November 22, 1907, which were made by the said insurance company, on October 21, 1931, striking from said policy as beneficiary the names of Claude Revlett, Clyde Revlett and Elma Davis, and substituting as beneficiary therefor L. E. Revlett and the change which was made by said company on July 20, 1933, striking from said policy the name of William Franklin Revlett and James Mitchell Revlett as beneficiaries in said policy, and substituting therefor Lou Etta Revlett as sole beneficiary therein, be, and the same are set aside and held for naught.

"It is further adjudged by the court that said original policy, dated November 22, 1907, is in full force and effect, and that the policies issued on October 21, 1931, and July 20, 1933, in lieu thereof,

as set forth in the petition, are void and of no effect. * * *"

From this judgment appellant appeals. Appellees base their cause of action in substance upon the allegations that appellant, L. E. Revlett, by coercion, intimidation, nagging, threats, and improper and undue influence, and against his own free will, caused him (Frank Revlett) to execute to her the deeds referred to in the judgment, and caused him to change the beneficiaries in the policy of insurance by having the names of W. F. Revlett, J. M. Revlett, Claude and Clyde Revlett, and Elma Davis stricken from said policy and policies issued substituting her name in lieu thereof (he at the time being of a weakened and feeble mind and a lunatic). These allegations are denied in toto by appellant. A solution of these issues rests solely and entirely upon the probative character of the evidence. It is admitted that appellant and Frank Revlett, the father of appellees, married on the 11th day of June, 1901, and lived together as man and wife continuously until his death on the 4th day of February, 1934, which was approximately 33 years. Appellees, however, insist that this marriage was illegal and bigamous, and, therefore, appellant was not in fact the wife of their father. The legality of their marriage is not before the court because that issue was not adjudicated or passed upon by the chancellor. The evidence pertaining to same is of no importance. The only question presented here is, Did the chancellor commit an error in setting aside and holding for naught the deeds in question, and in setting aside the policies that changed the beneficiaries from appellees to this appellant under the issue joined? Whether the appellant and Frank Revlett were legally married or not does not enter into the controversy. It is certain from the proof that they did live together in good faith until his death, believing they were man and wife. It is in proof that when they were advised by appellees' attorney (who at that time was her attorney) that their marriage was illegal and void, they married again on the 7th day of April, 1933, in Indianapolis, Ind. We find no positive proof in the record whether her first husband was dead or alive when the last marriage on the 7th day of April, 1933, was consummated. It is in proof by a number of witnesses who resided in the same neighborhood of appellant after the family moved to Muhlenberg county from McLean county,

where they formerly resided, and by those who knew her best, soon after her marriage to the death of her husband, that she was a hard-working, industrious, economical, careful, and businesslike woman and a dutiful wife. It is further in proof that when she married Frank Revlett he had no property of any especial value. He owned no real estate at all. He was a widower with four boys, these appellees, living with him, to wit, W. F. Revlett, then 16 years of age; J. M. Revlett, 11 years of age, and Claude and Clyde Revlett, twin boys only 7 years of age. The daughter, Elma Davis, lived away from home. After their marriage, the proof is that appellant assisted her husband in the rearing, caring for, and in educating the four boys; and in doing so she did the housework, including the laundry, wove carpets and sold them, raised and sold all kinds of fowls, milked the cows and sold milk and butter, applying the proceeds to the payment of this land and for the use and benefit of their family. Soon after their marriage, they purchased two small tracts of land in McLean county, and in a short while thereafter paid for it. Later, they sold this land for a profit and moved to Muhlenberg county, where later they purchased the land that Frank Revlett deeded to her on September 11, 1931, and which is now one of the deeds sought to be set aside. After moving to this farm she continued as she had formerly done, to do the housework, laundering, and in addition labored upon the farm, peddled the products of the farm, and she and her husband, together with some aid and assistance of his children, these appellees or some of them, made their living and paid for the land with what they made, together with the application of the proceeds of the sale of the first lands they first bought and sold. There is no proof that appellant was not a kind and affectionate wife and mother, at least up to this time.

It is in proof by appellees and several of their witnesses that some time during the years of 1905 and 1906, the exact time is not made certain, that their father received a lick upon his head. The extent of the injury is disputed by appellant. Appellees, themselves, are the main witnesses on that point. They state that from the time their father received the lick on the head, at different periods, he suffered from severe headaches, and was irritable and easily disturbed; that on account thereof his mind to a certain extent became affected

and weakened; that often he would break down and cry and imagine troubles that did not exist and was very forgetful. However, these same witnesses admit that their father made trades, bought livestock for his farm, and rented his farm to others and in many ways attended to his business, but they claim that in doing so he made bad trades and oftentimes such contracts that had to be rescinded. It is in proof that after receiving the lick upon his head their father applied for and secured an insurance policy, dated on the 22d day of November, 1907, for the sum of $2,000, payable $500 to W. F. Revlett, appellee, $500 to J. M. Revlett, and $500 to his wife, L. E. Revlett, and the other $500 to be divided equally between appellees Claude and Clyde Revlett and their sister, Elma Davis. An agreement was at the time made that one-half of the premium upon the policy was to be paid by W. F. Revlett and J. M. Revlett, which they claim they paid. It is further in evidence that after receiving the lick on the head their father bought land in Muhlenberg county, had a portion of it deeded to his son, one of the appellees herein, which was afterwards deeded back to him. It is shown that he indorsed notes at the bank for appellees, assisted and advised them in the purchase of land. Evidently, the lick on the head was not sufficient to destroy his capability to attend, it may be, in an imperfect way, to his business. The proof is to the further effect that on or about the year 1918 Frank Revlett became afflicted with high blood pressure resulting in a partial paralytic stroke. After that time he was unable for some years to labor or attend to his business affairs as he had formerly done, but was able to look after his farms, so far as making contracts with others to cultivate them, and that he did a part of the chores about the house. But in the main, from the proof, the appellant became the burden bearer and homemaker and continued to work upon the farm as she had done before, and continued to peddle what was made to her neighbors and the citizens of the community. In doing so, she would go about from place to place for the purpose of selling same in all kinds of weather, thereby subjecting herself to all of the hardships that such a life under such circumstances forced upon her.

On the 11th day of September, 1931, as before stated, Frank Revlett, her husband, made and executed to her a deed to the farm they were living upon. The original deed or a certified copy thereof is not in the

record. However, the formalities of its execution are not questioned. After the execution of the deed, she had the residence insured for $1,000; also her household furniture. Later, the house and furniture caught fire and burned; then the collection of the insurance by appellant upon the house was objected to by appellees. The mental condition of their father was brought into the question. Up to that time there had been no particular complaint of his ability, in a reasonable extent at least, to attend to his business. For the purpose of preventing her from collecting the insurance, a proceeding was instituted at the instance of appellees in the circuit court of Muhlenberg county, the county judge presiding for the sole purpose of having Frank Revlett adjudicated a lunatic, in order that the insurance when collected might not be paid to appellant, but placed instead in the hands of a committee of their father. Such a judgment was rendered by the court without the intervention of a jury, which so far as the appointment of the committee was concerned was unauthorized under section 2151, Kentucky Statutes, as construed in Daly et al. v. Spencer's Committee et al., 260 Ky. 19, 83 S. W. (2d) 502.

Soon after that judgment was rendered and before the insurance policy had been collected, it is in proof that appellant reached the conclusion that her attorney was not protecting her interest as he should, so she dismissed him and employed another. (Whether that conclusion was well founded or not, we are not concerned. Such a conclusion may have been imaginary upon appellant's part.) It further appears in the proof that after the judgment was obtained declaring Frank Revlett a lunatic, that an unexecuted oral agreement was entered into by appellant and appellees on the advice of her attorney; that the deed made to her by Frank Revlett was to be set aside; that the $1,000 insurance money due from the insurance company on account of the burning of the house was to be collected; that a mortgage that had been executed by appellant and Frank Revlett to C. O. Boggess some time before for $250 was to be paid out of the insurance money and the remainder to be used for the benefit of appellant and her husband, and the insurance policy, of date October 21, 1931, in which the beneficiaries, Clyde and Claude Revlett and Elma Davis, had been changed to appellant, L. E. Revlett, should be changed back, so

they could get the $500 at the death of their father. It was further in proof that the judgment declaring Frank Revlett insane dated on the 5th day of February, 1932, was then set aside and another judgment rendered on the —— day of December, 1932, adjudging him sane. From those facts, it appears in the record that Frank Revlett was insane by the first judgment, and sane, competent, and able to attend to his business by the last judgment, which all occurred within the same year and only a few months apart. The only conclusion that the court can reach from such a state of facts is, that the first judgment was rendered in order that the deed be set aside and the insurance collected and placed in the hands of a committee to prevent appellant from collecting it, and that the last judgment was entered into after obtaining the alleged agreement from appellant for the purpose only of enabling appellant to properly execute the deed or deeds that would place the title again in Frank Revlett. After the judgment of sanity was obtained and before this agreement was carried out, appellant repudiated and refused to carry out the parol agreement. After this was done appellant employed another attorney and proceeded to collect the insurance from the Fidelity Insurance Company for the house burning, appellees charged appellant not only of committing the crime of bigamy in marrying their father, but threatened her with prosecution for the crime, and also charged her of the crime of burning her residence in order to collect the insurance. It is in evidence that later an indictment was procured against her for the crime of house burning and that she was tried and acquitted by a jury.

We have reached the conclusion that under that evidence, and as the court on the —— day of December, 1932, adjudged Frank Revlett sane, then the question of lunacy or weakness of his mind does not seriously enter into the controversy.

We will not undertake to state the evidence seriatim of each witness touching the mental condition of Frank Revlett from the date of his marriage to appellant on the 11th day of June, 1901, until his death on the 4th day of February, 1934, for to do so this opinion would be extended to an unreasonable length. To summarize will be sufficient.

Frank Revlett received an injury from the effect

of a lick on his head from a piece of timber about the years 1906 or 1907. The lick seemed to affect him to a certain extent mentally. He at times would be fretful, irritable, and forgetful. About the year 1918, 10 years later, he had a partial stroke of paralysis. From that time he gradually grew worse. It is in proof that he would go down in the fields of his farm and forget his way back. Sometimes he would get confused and be lost in his residence. He made bad trades, bought live-stock, and lost money in the transaction. He signed papers as surety that he should not have signed. He would take spells of crying and oftentimes expressed himself of fearing starvation and approaching death. He had a dread of death and feared someone would hurt him. Dr. H. D. Newman, who treated him in the year 1918, and again in the year 1932, professionally, stated that in his opinion he was not able to engage in business transactions which required judgment. The aforesaid is in effect the extent of the testimony of his mental capacity introduced by appellees. It is noted that most of this testimony comes from appellees them-selves, and from their relatives and members of their families direct.

A brief summary of the evidence of appellant may be stated as follows: Appellant, herself, stated that she lived with her husband over 33 years; that soon after their marriage her husband received a lick on the head, but it was of small consequence; that it injured him very little; that it did not stop him from working; that he went to work the next day after receiving the lick; that his mind was not to any extent affected by the lick. She further stated that on the 8th day of January, 1918, he had a partial stroke of paralysis; that on account of that stroke he did not work for several years, but he became better and then worked some, but not as he had hitherto done; that he hauled railroad cross-ties to Rochester, a town nearby, and helped her in working and hoeing the garden; that his mind at all times was good; that he at no time relied upon the judgment of his boys or any one, but relied entirely upon his own judgment; that appellees relied in making investment for themselves upon his judgment, that he transacted business in the banks; that the banks loaned him money without security and accepted him as surety for others; that he signed notes as surety for his sons; that he made

a deed to his son Will, and possibly to his sons Clyde and Claude. It was further shown by a number of witnesses, his intimate neighbors who saw him often and talked with him, and some of whom had business transactions with him, that his mental faculties were good until his death. It was especially shown by as many as three physicians who were with him several times just prior to his death that he had full possession of his mental faculties and that they observed nothing from talking with him and from making a professional examination of him to indicate that his mental faculties were especially weak. It is especially shown by A. J. Heuring, a notary public, who took the acknowledgment of Frank Revlett to the deed dated on the 12th day of August, 1933, that for his age he was an unusually bright man; that he saw nothing in his conduct to indicate that he was mentally unsound; that Frank Revlett came to his office, signed and acknowledged the deed, and at the time he did so he spoke to him and told him about the description of the land conveyed. This is in effect the substance of the testimony of appellant.

Every person is presumed to be sane and of sound mind. The deed of an insane man is not void. It is only voidable. In the case of Begley et al. v. Holliday's Committee et al., 248 Ky. 453, 58 S. W. (2d) 654, we said:

"The deed of an insane person is not void, but only voidable, and, before a court will set it aside, some equitable grounds warranting its cancellation must be shown. See Clay v. Clay's Committee, 179 Ky. 494, 200 S. W. 934."

The following rule has often been approved by many of our courts:

"* * * It is well settled that mere imbecility or weakness of mind in a grantor, however great, does not affect his deed, unless such a degree be shown as rendered him incapable of understanding and protecting his own interests, and it has been declared that even mental capacity on the part of the grantor is not required for the execution of a valid deed.

"* * * The fact that the grantor is physically unable to look after his property, or that his mind is enfeebled by age or disease, is not sufficient to

render the deed voidable, if he still retains a full comprehension of the meaning, design and effect of his acts at the time of the execution of the deed.'' See 14 R. C. L. 590, 591.

In the case of Chrisman v. Quick et al., 174 Ky. 845, 193 S. W. 13, 14, we said:

" 'Equity looks only to the competency of the understanding, and neither age, sickness, extreme distress, nor debility of the body will affect the capacity to make a contract or conveyance, if sufficient intelligence remains to understand the transaction.' 9 Cyc. 459.''

The proof is not sufficient to satisfy the court that at the time the deeds were signed and executed by Frank Revlett or at the time the changes were made in the beneficiaries in the policies that he did not have mental capacity and sufficient understanding of the purpose of his acts. The fact that he had reached the age of 68 years, as the proof shows, or that he had some 25 years before a lick on the head, or that he oftentimes was irritable or had defective memory and was of a sympathetic temperament and easily disturbed and easy to shed tears and fearful of starvation or impending death, is not enough to authorize the court to declare void the transactions made by him as appears in the proof. There must be some direct proof sufficient to convince the minds of the court that at the time the transactions were entered into that he did not and could not understand his acts. The proof falls short of that requirement. It is further insisted that the deeds made to his wife and the changes in the policy of insurance were not done of his own free will, but resulted from the undue influence of appellant, and by reason of her nagging, coercing, and threatening him, compelling him thereby to do so. In other words, it is claimed that on account of the acts and doings of appellant his will was dethroned and her will was carried out in the execution of the deeds, etc.

We have examined the evidence closely, read and considered it carefully, and have reached the conclusion from the whole of the evidence that appellees by a concerted and determined purpose on their part decided that their father should not, even if he so desired, place his property or any part of it so that it could be enjoyed by appellant. There is no proof showing the value of

the property, except we find in the judgment that Frank Revlett was declared insane; that was afterwards set aside; and that the value of his property was only $2,000. To carry out that purpose, the proof is to the effect that appellees charged appellant with being a bigamist; also charged her with burning the dwelling house; and further, in an unauthorized and illegal proceeding, charged their father with being a lunatic and procured a judgment to that effect. This was done, as the proof indicates, to prevent their alleged stepmother in collecting the insurance on her house, when later, and within a few months in a similar proceeding, they procured a judgment declaring their father sane and competent to look after himself and to attend to his own business. Under such showing it is not at all surprising that their father would make and execute the deeds and have the beneficiaries in the policies changed as was done. The proof is abundant that appellant had practically made herself a slave to the wants, care, and attention of her husband, and especially so in his sickness and declining years. It is in evidence that the property which was accumulated, or the larger part thereof, took place since their marriage and with her assistance, and a portion of the time by her management. The deeds to the land as well as the policy of insurance in question were made and contracted for since receiving the lick on his head and all of his property accumulated between the date of his marriage and his death. There is some evidence produced by appellees coming mainly from members of their family that she had stated on one occasion that she kept Frank Revlett from sleeping for 40 days until he made the deed, and some intimation from one of the appellees that she said that the house that her husband had deeded to her would burn, and also a statement from Byron Revlett, a boy of 17 years of age, a son of one of the appellees, that on one occasion he went to his grandfather's, who was visiting his father at the time, to get his grandfather's clothes; that after he had started home he turned and went back to the house and overheard his stepgrandmother complaining because Frank Revlett was permitted to go to his son's house and said in substance that he "did not have any sense and would tell all he knew about their burning the residence because she had burned it."

Such evidence as this does not impress the court with its truthfulness, but it does to a certain extent con-

firm our conclusion that the record shows a determined effort on the part of appellees to prevent, if they could, appellant in her declining years, after spending her life as the homemaker and practically the breadwinner for many years, from enjoying any part of the property of her husband.

To destroy the effect of these deeds and the changes in the policy, the evidence must be sufficient and strong enough and convincing enough to the court that the undue influence of appellant over her husband was such over his mind as to destroy his free agency and to constrain him to do against his will what he would otherwise refuse to do. The evidence fails to meet the requirement. Chrisman v. Quick et al., supra; Combs et al. v. Combs, 271 Ky. 543, 112 S. W. (2d) 989.

Without extending this opinion further, we have concluded that the court erred in setting aside the deeds made to appellant and in canceling the policies changing the beneficiaries to this appellant.

Wherefore, the judgment is reversed, with directions for further proceedings consistent with this opinion.