## Rose v. Rose et al.

Oct. 20, 1944.

Moss Noble for appellant.

Williams & Allen and O. J. Cockrell for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Logan G. Rose owned more than 600 acres of land in Breathitt and Wolfe Counties. He had nine children, two of whom predeceased him but left descendants. When ninety-two years old, Rose executed a deed to his son, G. B. (Bunk) Rose, for 100 acres of land, including the residence. After the grantor's death, four of his children brought suit to set aside the deed on the grounds of mental incapacity and undue influence. The other heirs took no part in the case. The grantee denied the allegations of the petition and pleaded that the conveyance was pursuant to a contract made many years before. The chancellor set aside the deed and the defendant appeals. Each side insists there is no conflict in the evidence supporting their respective contentions, appellant maintaining that the judgment is wrong ·and the appellees that it is right.

There is no question that the grantor was a strong, vigorous man and that he attended to his farm and business even in his later years. He worked in the field until he was about ninety years old. The children had married from time to time and moved from the home,

excepting the grantee. He remained, unmarried, until after the death of his mother in 1938. He married within a year, when nearly sixty years old, and his wife became the housekeeper. The record shows that this son had been faithful and diligent in helping his father in the farm work and attending to his business. He operated a blacksmith shop on the premises, but appears not to have accumulated any estate excepting a little livestock.

The court properly sustained exceptions to that part of the defendant's deposition proving a contract and other conversations and transactions with his deceased father. Section 606, Civil Code of Practice. Another witness testified, however, that upon one occasion the father told him of his purpose to deed this property to Bunk and asked him to tell his son to have a deed prepared; but the witness was impeached by evidence of a bad reputation.

There is not a bit of evidence, positive or circumstantial, of undue influence.

The sum and substance of the testimony tending to establish mental incapacity is that the old gentleman at times did not recognize some of his children or others, and that after the death of his wife he made frequent trips to her grave on the premises, sometimes two or three times a day. There is but little factual evidence for the opinions of lay witnesses as to mental incapacity. On the other hand there was evidence that he continued mentally and physically active until a short while before he died and after the deed was made.

Some time in the winter, probably in January or February, 1942, one of the sons came to the home and learned his father had sold some cattle. He stated to Bunk that they should have him declared incompetent to manage his estate and have a committee appointed for him, else he would be out-traded and lose what he had. The two differ as to whether Bunk agreed.. This son and some of the other children later instituted lunacy proceedings. Two doctors whom they had to examine their father did not testify on the inquest or in this suit. Dr. Hoge, of Jackson, examined him and testified in both proceedings. His very clear and convincing testimony here is that he was of sound mind and capable of managing his affairs. The inquest was held in the Breathitt Circuit Court sometime late in February. The jury

found the old gentleman to be sane and capable. The fear of the son that his father would be out-traded because he had sold the eight head of cattle too cheap was proved not to be well-founded, for the purchaser testified that when he put them on the market in Mt. Sterling the next day he lost $27 in the transaction.

A few days after the inquest, Rose sent for Sam Miller, a Deputy County Clerk, and had him prepare a deed to this property to his son, Bunk. It was on a printed form and duly executed and delivered to the grantee. He had the deed examined by his attorney who advised that he procure another because of some omissions. The lawyer prepared such a deed and Miller and another disinterested man took it to the grantor and he executed it on March 13, 1942. They testified convincingly as to his full appreciation of what he was doing and to his mental capacity to do it. The deed was put to record on May 6th and the grantor died May 9th.

Were the grantor not so old, ninety-two, and the relationship between him and his son not so close, we suppose there would not have been even an attempt to set aside the deed. It is common observation that when one has passed the age of ninety, he is usually weak, both in body and mind. But old age does not constitute in itself incapacity to enter into a valid contract or execute a deed; nor does mere weakness of mind disqualify one from giving his property to a member of his family where there is no evidence of unfairness. As stated in the syllabus to Boardman v. Lorentzen, 155 Wis. 566, 145 N. W. 750, 751, 52 L. R. A., N. S., 476:

"A person, however old, so long as he retains appreciation of his possessions and relations to others, may dispose of his property in any lawful way he sees fit, and regardless of whether his children or any one else may be pleased therewith."

The grantor is here described as a resolute, active man, well-preserved to an extraordinary degree, both mentally and physically. He had few characteristics of a man of his great age. There is evidence only of an occasional forgetting of names or faces and a little confusion in unrelated matters. Standing alone, that is not sufficient to establish a lack of ability to execute the deed. Revlett v. Revlett, 274 Ky. 176, 118 S. W. 2d 150. But there is more potent evidence. Not only is there always the presumption of sanity and contractual ca-

pacity, rather than the converse, but we have here the unusual circumstance of a judicial adjudication of such state of mind and capacity just a few days before the transaction. This is strong, prima facie evidence of the grantor's mental condition when he executed the deed. 28 Am. Jur., Insane and Other Incompetent Persons, sec. 140; Clark's Ex'r v. Trail's Adm'r, 58 Ky. 35, 1 Met. 35; Logan v. Vanarsdell, Ky., 86 S. W. 981; Wathens v. Skaggs, 161 Ky. 600, 171 S. W. 193; Fugate v. Walker, 204 Ky. 767, 265 S. W. 331. Certainly, such evidence was not overcome. We are of opinion that the chancellor should have sustained the deed and dismissed the petition.

The judgment is reversed.