## Flynn v. Jones.

January 20, 1950.

E. R. Beatty, Judge.

42

Shumate & Shumate for appellant.

John W. Walker for appellee.

CHIEF JUSTICE SIMS—Affirming.

This action was instituted by Nettie P. Jones, as guardian of her father, Charles W. Flynn, against her mother, Laura Flynn, to have declared void the order of the Estill County Court naming Mrs. Flynn as Committee for Charles W. Flynn, and to recover $928.95 which Mrs. Flynn had received from his estate. The answer denied Mrs. Flynn's appointment as Committee was void and by way of counterclaim she averred she had expended as Committee of her husband $3954.63 of her own funds in the support and education of three infant children of the incompetent, and she asked judgment in that sum, credited by $878.95 which she received from his estate, and that she be adjudged a lien on his farm to secure her debt.

After hearing considerable proof the chancellor adjudged that Mrs. Flynn's appointment as Committee of her husband was void, but denied Mrs. Jones any re-

covery. Likewise, the chancellor found against Mrs. Flynn on her counterclaim. Mrs. Flynn appeals and Mrs. Jones cross-appeals.

Mr. and Mrs. Flynn were husband and wife until she divorced him in 1946. They had a large family of eleven children and lived in Estill County on a poor farm of 100 acres worth between $800 and $1,000. Mr. Flynn was adjudged insane in 1941 and was committed to the Eastern Kentucky Asylum. He remained there until August 1947, when he was paroled to his daughter, Mrs. Jones, who lived in Ohio. She took her father to that State and instituted proceedings against him there and had herself appointed his guardian. The briefs state that the office of guardian of an incompetent person in Ohio corresponds to that of committee in this jurisdiction. In addition to his farm, Mr. Flynn had personal property worth $337 at the time he was adjudged insane by the Estill County Court. Three of his children were then infants; Thomas 16, Edward 14 and Sophia 10 years of age. The two boys contributed to the support of their mother and sister by working at a stave mill, and Sophia went to school. In 1943 Thomas went into the armed service, where he died, and the same fatality happened to another of the sons, and Mrs. Flynn received $108 per month from the U. S. Government for each of her deceased sons, and $57 per month insurance on one of them. She received $541.95 due her husband from the U. S. Government as an allotment or as insurance from his two boys being in the armed service, and she converted the small amount of personal property owned by her husband into cash, abandoned the farm and moved to Irvine and divorced her husband in 1946.

Edward remained with his mother until 1945 and Sophia was still with her when the proof in this case was taken. Mrs. Flynn filed her settlement as Committee showing the various items she expended in the support of the infant children, which aggregated $3,954.63, credited by the $878.95 she received from her husband, as indicated in the above paragraph.

Appellee, Mrs. Jones, complains that her mother had no vouchers covering these expenditures, nor was her claim verified as required by KRS 387.260. Mrs.

Flynn countered by arguing that no exceptions were filed to her settlement. However, we do not have to go into the merits of the respective contentions for the reason that Mrs. Flynn's appointment as Committee for her husband was void.

The record shows there was no jury impanelled in the sanity hearing of Flynn. It is provided in KRS 387.220, that a committee for a person of unsound mind, who is a resident of this state, may not be appointed unless such person has been found to be such by the judgment of the circuit or county court of the county of his residence upon the inquest of a jury. We have written that this section requires the inquest of a jury as a condition precedent to the appointment of a committee. Daly v. Spencer's Committee, 260 Ky. 19, 83 S. W. 2d 502; Revlett v. Revlett, 274 Ky. 176, 118 S. W. 2d 150. It was said in Story v. Story, 304 Ky. 100, 200 S. W. 2d 146, that under KS 216aa-74 (now KRS 202.080) a jury may be waived in a sanity inquest, as the statute so provides. But KRS 387.220 provides a jury is mandatory at such an inquest where a committee is appointed. The Daly case points out in the next to last paragraph of the opinion that where no jury is impanelled at the inquest, the so-called committee cannot be even a de facto officer.

Appellant relies upon McCoy v. Ferguson, 249 Ky. 334, 60 S. W. 2d 931, 90 A. L. R. 891, as authorizing her expenditures as Committee. But that was not a case where a committee was acting under a void appointment, but was one where a duly appointed guardian failed to apply to the chancellor for approval before making expenditures out of the principal of his ward's estate. It was there held that the guardian's failure to obtain the consent of the chancellor in advance of the expenditures for necessities did not prevent him from receiving credit therefor where same would have been approved had such application been made in advance.

As contended by appellant, the father is primarily liable for the support of his three minor children. The statute so provides, KRS 405.020. The $878.95 which came from her husband's estate into Mrs. Flynn's hands while he was in the asylum was used by her in the

maintenance and support of their three infant children from 1941 to 1946. She had a right to use this sum for this purpose. Polivick v. Polivick, 259 Ky. 653, 83 S. W. 2d 8.

It appears to us that the chancellor correctly decided this case and his judgment is affirmed both on the appeal and the cross-appeal.