RENDERED:  NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1350-MR

SARINA WASHINGTON                                                      APPELLANT


v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 19-CI-007300


JEFFERSON COUNTY
SHERIFF'S OFFICE                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND EASTON, JUDGES.

CETRULO, JUDGE:  Appellant, Sarina Washington ("Washington"), appeals a

Jefferson Circuit Court order enforcing an oral agreement between Washington

and the Assistant Jefferson County Attorney ("County Attorney")[1] that settled a

civil cash forfeiture lawsuit.  Based upon our review of the entire record, we

affirm.

---

[1] Representing appellee Jefferson County Sheriff's Office.

# BACKGROUND

In October 2019, Washington mailed a package from Louisville, Kentucky, to Long Beach, California. During the shipping process, a narcotics-detecting canine alerted to the presence of controlled substances on/within the package, and a detective with the Jefferson County Sheriff's Office executed a search warrant to open the package. Upon searching the package, the detective found a wooden box holding a framed canvas painting. Inside the painting's hollowed frame, a detective located and confiscated $8,820 in cash. In November 2019, the County Attorney filed a civil complaint seeking forfeiture of the confiscated currency pursuant to Kentucky Revised Statute ("KRS") 218A.410(1)(j).[2] Washington opposed, and litigation continued for four years.

On December 5, 2022, the County Attorney called Washington and offered her a settlement that included a return of $1,250, with forfeiture of the remaining $7,570. Washington accepted the terms of the settlement but shortly

---

[2] KRS 218A.410(1)(j) allows everything of value furnished or intended to be furnished in exchange for a controlled substance to be forfeited. Under this statute, all money "found in close proximity to controlled substances" is presumed to be forfeited, and the burden is on the claimant to rebut this presumption by clear and convincing evidence. Yet, the Commonwealth "must first produce some evidence that the currency or some portion of it had been used or was intended to be used in a drug transaction." *Osborne v. Commonwealth*, 839 S.W.2d 281, 284 (Ky. 1992). Here, the Commonwealth initially argued that the canine alert – *i.e.*, the odor of narcotics – was sufficient to meet their burden and establish that the money was traceable to an exchange of a controlled substance. While it is unclear if a canine alert alone is sufficient or if the Commonwealth further linked the confiscated money to a controlled substance exchange, the issue of whether Washington sufficiently rebutted the KRS 218A.410 presumption is not on appeal. The subsequent oral contract is the only substantive matter on appeal.

thereafter attempted to revoke her acceptance. Two days after the December 5 phone call, on December 7, Washington sent a letter to the County Attorney rejecting the settlement offer because, she alleged, $1,250 was "not enough" and the Commonwealth had not provided enough evidence to justify the forfeiture. The County Attorney filed a motion to enforce the oral settlement made within the December 5 phone call.

In support of that motion, the County Attorney provided sworn testimony of Washington. In January 2023, Washington had testified via deposition and admitted that she agreed to the settlement during the December 5 phone call. The deposition conversation included:

| County Attorney: | Now, do you remember speaking – you and I speaking on December 5th of this year? |
|---|---|
| Washington: | Yes. |
| County Attorney: | Okay. And in that, in that conversation, you and I came to an agreement of how to resolve this case? |
| Washington: | You said like a thousand dollars would be returned. |
| County Attorney: | Uh-huh. |
| Washington: | Out of the money. |
| County Attorney: | Correct. It was $1,250 would be returned and the remaining $7,570 would be forfeited pursuant to KRS 218A. Do you remember that conversation? |

Washington:                    Uh-huh.

County Attorney:              Okay.  And do you remember agreeing?

Washington:                    Yes.

In October 2023, Washington filed a motion asking the circuit court to take judicial notice of her alleged bipolar disorder.  However, on that same date, the circuit court had granted the County Attorney's motion to enforce the settlement agreement and found that "there was a clear offer, acceptance, and there are no uncertain terms or lack of consideration.  [] Washington's apparent change of heart notwithstanding, a valid contract exists between the parties and as such, [the County Attorney] is fully entitled to seek enforcement of that contract." Washington appealed.

## ANALYSIS

On appeal, Washington, *pro se*,[3] alleges the circuit court erred in enforcing the oral agreement because she lacked the capacity at the time of the December 5 phone call.[4]

---

[3] Washington's appellate briefs contain improper arguments – such as language and law related to criminal proceedings despite this being a civil action – but we shall grant her leniency and attempt to interpret her arguments within the confines of our appellate review.

[4] Washington also argues the circuit court committed reversible error when it did not rule on two pending motions – an August 2023 motion to return the currency and her October 2023 motion for judicial notice (of mental illness) – but this issue is not properly preserved.  Before an argument may be raised at the appellate level, it must first be brought to the circuit court's attention.  *See Triplett v. Triplett*, 414 S.W.3d 11, 15 (Ky. App. 2013).  Here, a CR 59.05 motion

-4-

We may reverse a circuit court's findings of fact only if they are clearly erroneous or unsupported by sufficient evidence. Kentucky Rule of Civil Procedure ("CR") 52.01, 52.03; *General Motors Corp. v. Herald*, 833 S.W.2d 804, 806 (Ky. 1992). A settlement agreement is a contract and thus governed by contract law. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). "[I]ssues regarding the formation and construction of a contract are questions of law[,]" which we review *de novo*. *Britt v. Univ. of Louisville*, 628 S.W.3d 1, 5 (Ky. 2021) (citation omitted). While Washington appears to be under the impression that only written settlement agreements are binding, oral settlement agreements are also binding and enforceable. *See Spot-A-Pot, Inc. v. State Res. Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009) (citation omitted). In fact, "an oral contract is ordinarily no less binding than one reduced to writing." *Frear*, 103 S.W.3d at 105 (citation omitted). As with any contract, in order for a settlement to be valid, "there must be an offer and acceptance, and the terms must be certain, full and complete. There must also be mutual concessions or yielding of opposing

---

would have been more appropriate to bring the matter to the circuit court's attention. CR 59.05 motions allow parties to call errors of law (and fact) to the circuit court's attention prior to appeal to give the circuit court an opportunity to correct such a legal oversight. *See Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. 2019). However, regardless of preservation concerns, the circuit court's failure to rule on Washington's pending motions was harmless error. First, denial of her motion to return the currency is implied by the court's order to enforce the settlement splitting that currency. Second, her motion for judicial notice is irrelevant because, as discussed more below, mental illness does not automatically preclude capacity, and the tendered medical documents (with this motion) do not rebut the presumption of capacity on December 5.

claims." *Hines v. Thomas Jefferson Fire Ins. Co*., 267 S.W.2d 709, 711 (Ky. 1953), *as readopted* (Apr. 30, 1954) (citation omitted). The party attacking a settlement bears the burden of showing the contract "is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Casey v. Illinois Cent. Gulf R.R. Co*., 687 F. Supp. 1112, 1114 (W.D. Ky. 1988) (citation omitted).

In the present case, Washington does not assert that the oral agreement was invalid or incomplete, only that she lacked capacity to make the agreement. She asserts, without evidentiary support, that on December 5 the County Attorney called her via her fiancé's phone; her fiancé informed the County Attorney that she was mentally unfit at the moment, but that the County Attorney insisted on speaking with her. Even if true, this argument alone is not enough. While mental capacity is necessary, struggling with a mental illness does not automatically preclude capacity to contract. *See Hagemeyer v. First Nat'l Bank & Tr. Co*., 209 S.W.2d 320, 321 (Ky. 1948). An individual has capacity to contract if he/she has "the ability to understand and appreciate the consequences of the particular transaction." *Conners v. Eble*, 269 S.W.2d 716, 718 (Ky. 1954). A lack of capacity "must relate to the immediate time when the contract was made." *Hall v. Crouch*, 341 S.W.2d 591, 594 (Ky. 1960) (citation omitted). Indeed, there is a presumption of capacity. *Rose v. Rose*, 182 S.W.2d 977, 978 (Ky. 1944). "When

-6-

faced with a presumption, 'the party against whom it operates is required to introduce evidence to rebut it. If this burden of going forward is not satisfied,' the circuit court may properly decide the question as a matter of law." *Estate of Adams by & through Mitchell v. Trover*, 547 S.W.3d 545, 554 (Ky. App. 2018) (quoting *Rentschler v. Lewis*, 33 S.W.3d 518, 520-21 (Ky. 2000)).

Washington has provided no evidence to overcome the presumption of capacity. She did not submit an affidavit from her fiancé arguing her state of mind on December 5. While she later submitted medical records indicating mental illness, she testified during her deposition (one month after December 5) that she did not have any health conditions that would affect her testimony, and she was taking her prescribed medication. There is nothing in the record to indicate that Washington's mental health rendered her incapable of understanding and appreciating the terms of the settlement agreement. Further, there is no indication the circuit court had concerns about Washington's capacity to contract; she actively involved herself in the litigation, and her two prior attorneys did not ever raise issues of competency. There is no evidence in the record to counter the presumption that Washington had the requisite mental capacity to enter into the agreement on December 5.

The circuit court did not err by finding that the December 5 settlement evinced a meeting of the minds. There was an offer to forego litigation,

acceptance of that offer, and an exchange of specific, valuable considerations (Washington accepts $1,250 and the Commonwealth accepts $7,570). During her deposition, Washington acknowledged the offer's terms, her understanding of those terms, and admitted that she initially accepted the settlement offer. Her December 7 letter did not claim the settlement terms were ambiguous. The agreed upon terms were full and complete and set forth promises of performance by each party. *See Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (citation omitted). Although Washington later changed her mind, the parties did not make their agreement contingent upon a writing. Thus, the circuit court did not err by upholding the oral agreement.

## CONCLUSION

Therefore, we AFFIRM the Jefferson Circuit Court order enforcing the settlement agreement.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarina Washington, *pro se*
Louisville, Kentucky

BRIEF FOR APPELLEE:

Andrew Miller
Assistant Jefferson County Attorney
Louisville, Kentucky