Karen Lynn TRIPLETT, Appellant

v.

Charles Thomas TRIPLETT, Appellee.

No. 2011–CA–002076–MR.

Court of Appeals of Kentucky.

July 5, 2013.

Rehearing Denied Oct. 25, 2013.

Mary Janice Lintner, Louisville, KY, for Appellant.

Scott E. Karem, Louisville, KY, for Appellee.

Before CAPERTON, LAMBERT, and MAZE, Judges.

*OPINION*

LAMBERT, Judge:

In this appeal arising from a dissolution of marriage action, Karen Lynn Triplett challenges orders of the Jefferson Family Court related to the division of Charles Thomas Triplett's (Tom) pension. She contends that the family court erroneously determined the marital and non-marital portions and that this diminished the marital portion of the pension. We have closely considered the record and the parties' arguments, and because we agree with Tom that Karen failed to adequately preserve her arguments below, we affirm.

Karen and Tom were married on August 4, 1990, in Las Vegas, Nevada. Four children were born of the marriage. The parties separated in January 2009, and Karen filed a petition to dissolve the marriage on February 12, 2010. At that time, two of their children were emancipated adults, and the minor children, twin boys, were nine years old. Karen requested that the parties be awarded joint custody of the minor children, with her named as the primary residential parent; that she be awarded child support; that any non-marital property be restored; and that the marital property and debts be divided in just proportions. In his response, Tom agreed that the parties should be awarded joint custody, but argued that they should equally split time with the children and that he should not be required to pay child support. However, Tom stated that the court should order child support based upon the parenting time schedule. Because the sole issue on appeal concerns the division of Tom's pension, we shall confine our remarks primarily to that issue.

Karen, who was fifty years old at the time she filed the petition, had been working at General Electric (GE) since 1981, and her gross monthly income was $7,600.62. She received an additional $500.00 per month in dividends from the GE Savings and Security Program (S & SP). Tom, who was seventy years old at the time the petition was filed, retired from GE in 1997, but had returned to work for GE on a part-time basis. He received $2,315 per month for his pension, social security benefits for himself and their minor children, as well as income from GE and from his flea market and eBay businesses. As of May 30, 2010, Tom's S & SP account had a balance of $424,781.66, and as of January 28, 2010, Karen's had a balance of $281,827.00.

In a pretrial memorandum, Tom addressed the marital and non-marital portions of his pension. Documentation he planned to introduce established that his pension benefit at the time of the marriage (July 31, 1990) would have been $1,498.91 and that he was currently receiving $2,314.57 per month. He submitted that the marital portion was $815.66, which was the difference between the two amounts.

By order entered May 12, 2011, the court approved a partial marital settlement agreement entered into by the parties. In the agreement, the parties set forth the settlement they had reached concerning the division of specific property, such as real estate, certificates of deposit, bank accounts, life insurance, automobiles, and personalty. The order also included their agreement related to the equalization of payments. On May 13, 2011, the family court entered a decree dissolving the marriage and incorporated the terms of the settlement agreement. All other issues were reserved for a decision by the court following trial.

The matter proceeded to a bench trial on May 12 and 13, 2011, and the parties filed post-trial memoranda. In her memorandum, Karen argued that the court should use the coverture method to determine Tom's non-marital interest in his pension by "dividing the number of years of marriage by the number of years of service to obtain the coverture fraction which is the percentage share of the marital interest in the defined benefit plan." However, Karen went on to state that the court should first reduce the total number of years of pre-marital service by the number of years allotted to Tom's first wife. She specifically argued:

The GE QDRO Administrator's letter states that as of the [sic] July 31, 1990, Tom was vested under the pension plan with 25.567 years (306.804 months) of

pension benefit service. However, Mary Jane [Tom's former wife] was awarded one-third of Tom's pension as of October 1, 1998, at which time he would have had 24.067 years of service (306.804 months minus 18 months). Therefore, the 25.567 years earned as of marriage should be reduced by 8.022 years—the years allotted to Mary Jane. This reduces Tom's pre-marital service to 16.045 years. The Court would then divide the 16.045 pre-marital service years into the 35.417 total years of service at the time of retirement to achieve a pre-marital coverture fraction of 45%. Accordingly, under this calculation, 45% of Tom's current pension benefit is his pre-marital benefit; 55% is marital. If the Court divides the pension benefits equally between the parties, it would award Karen 27.5% of Tom's pension benefit.

In his memorandum, Tom merely acknowledged that it would be necessary to enter QDROs related to those accounts, which should provide that the marital value of the pensions would be divided evenly.

On August 10, 2011, the family court entered extensive findings of fact, conclusions of law, and a supplemental decree of dissolution. In the order, the court made findings regarding the children; financial accounts, including the S & SP accounts and other funds; bonds; stock; debt; and child custody, support, and timesharing. Specifically related to Tom's pension, the court found as follows:

Thomas does not currently receive the full amount of his pension because a portion of his pension was previously awarded to a prior wife in 1988. The fact that a portion of his pension has already been awarded to a prior wife does not change the number of months that Thomas contributed towards his pension prior to his marriage to Karen.

In addition to $435.84 being deducted from his pension for his prior wife, Thomas has an additional 10% deducted to provide for Karen to have a 50% survivor annuity. Karen wants to keep the survivor annuity.

Thomas retired on September 1, 1997 with 35.417 years of pension benefit service or approximately 425 months of pension benefit service. Only 85 months (August 1990 to September 1, 1997) of marriage occurred at the same time that Thomas earned pension benefits. The coverture fraction is 85/425. The marital portion of Thomas' pension that he earned throughout his employment with General Electric is 20%.

In addition to the pension benefit that Thomas earned throughout his employment with General Electric, he has a personal pension account benefit with an option to fund same beginning in 1989. As the personal pension account benefit began after his first divorce, his prior wife did not receive any of Thomas' personal pension account benefit.

Based on Thomas' personal share statement, he contributed to the personal pension account during 1989 and continued to contribute to this account until he retired. He contributed to the account for 104 months from January 1989 through August 1997. For 85 of 104 months, Thomas was married to Karen. The coverture fraction is 85/104; therefore, 82% of Thomas' personal pension account benefit is marital. The personal pension account benefit is a small portion of Thomas' monthly pension benefit.

In its conclusions of law, the court awarded Karen 10% of Tom's pension benefit as well as 41% of his personal pension account benefit. The court noted that Karen wanted to keep the 50% survivor annuity, but indicated that if she wanted to continue this, the payment would come from her

share of Tom's pension. The court awarded Tom 35% of Karen's pension, 48.5% of her personal pension account benefits, and 50% of her voluntary pension account benefits, all as of May 13, 2011.

Following the entry of the above order, Karen filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter or amend challenging the trial court's treatment of Tom's pension and its failure to award child support. Regarding Tom's pension calculation, Karen argued that the family court made errors of fact in its calculations. She stated that Tom earned 9.85 years of pension benefit service during their marriage, not 85 months as the family court found, which represented 27.81% of Tom's earned pension service. In a footnote, Karen explained that there were "various reasons why the number of years of service earned by Tom during the marriage exceeded the number of years of marriage, including that GE does not award pension service based on actual years of service. Pension service is awarded based on other factors, including highest earned salary and changes within the GE pension plan during those years." She claimed to be entitled to half of the 27.81%, or 13.91% of his pension. Further, Karen stated that the court should subtract Tom's former wife's benefit "before applying the coverture fraction" in order to remove the risk of reducing her share and unfairly diminishing her marital share. That way, she would receive $370.86 of Tom's $2,666.12 pension benefit. Karen went on to argue that she should have received $493.73 per month of Tom's pension payments:

> The pension benefit he had accrued as of the date of their marriage was $1,498.41. By the time Tom retired in 1997, the value of his pension payments had grown to $2,380.00 per month. See Respondent's Trial Exhibit 15. Within inflation adjustments, it is now $2,666.12

per month. The Court should find that the difference between the pension value as of the date of marriage and as of the date of retirement ($881.59), plus 37% of the inflation increases since that time due to the fact that the increase is 37% of the current benefit ($105.86) are marital, for a total of $987.45, which should be divided equally between Tom and Karen, with Karen receiving $493.73 per month of Tom's pension payments.

In his response, Tom asserted that the family court correctly determined the coverture fraction to be applied to his pension based upon his months of pension benefit service (425.004) and his months of marriage to Karen (85) to award Karen 10% of Tom's pension benefits. He argued that Karen did not provide any evidence to support the footnote contained in her CR 59.05 motion regarding why the number of years of pension service during their marriage exceeded the number of years of marriage, and that this statement was conjecture. He also argued that Karen was not entitled to receive any benefits based upon what his prior wife received.

On October 18, 2011, the family court entered an order denying Karen's CR 59.05 motion. Karen then moved the family court to vacate the portion of the order prohibiting her from receiving the children's social security payments. After some litigation regarding the children's social security benefits, the family court entered another order addressing both the pension and the child support issues on November 21, 2011. Regarding the pension issue, the court addressed Karen's argument that Tom earned proportionally more credits toward his pension during the marriage than he did prior to the marriage. Karen's argument that "GE does not award pension service based on actual years of service, but takes into account earned salary and changes within the GE

pension plan during those years," the court held, was speculative. The court noted that Karen did not present any evidence at trial to establish this claim or documents showing GE's methodology and calculation. Therefore, the court upheld its prior calculations and award of 10% of Tom's pension benefits to Karen. The court stated that "it is equitable" and that it "was presented with no alternative formulation at trial." Finally, the court rejected Karen's claim that she was entitled to greater benefits based upon the benefits Tom's prior wife received. This appeal now follows.[1]

On appeal, Karen continues to dispute the family court's division of Tom's pension. Tom argues that the family court used the proper method to calculate the marital and non-marital portions and that Karen failed to preserve the arguments she raises in her brief by first presenting them to the family court. Rather, Tom asserts that the arguments she raised in the CR 59.05 motion do not match the ones she presents in her brief.

Before we may reach the merits of Karen's brief, we must address Tom's argument that Karen failed to preserve the issues she presents to this Court by first presenting them to the family court. Tom points out that the arguments Karen raised in her CR 59.05 motion—that the family court should have used a coverture fraction of 27.81% and awarded her a benefit payment of $370.86 OR should have taken into consideration the value of Tom's pension at the time of his retirement and inflation raises and awarded her $493.73 per month—do not match the arguments she made in her brief. In her brief, Karen argues that the court's use of a coverture fraction was inappropriate, that the court should have used the "time rule" formula

to determine the marital and non-marital portions, that it should have found that 44% of Tom's pension was earned during the marriage, and that it should have awarded her 22% of Tom's pension. In the alternative, the court should have subtracted the pension benefit as of the date of the marriage from the pension benefit as of the date of retirement and then awarded her half of that sum ($1,167.21 per month).

 Before an argument may be raised at the appellate level, it must first be brought before the trial court.

> [T]he argument that appellee's failure to stop to render assistance is a separate claim for relief was not presented to the court below but rather appears for the first time at the appellate level. The Court of Appeals is one of review and is not to be approached as a second opportunity to be heard as a trial court. An issue not timely raised before the circuit court cannot be considered as a new argument before this Court.

*Lawrence v. Risen,* 598 S.W.2d 474, 476 (Ky.App.1980). In *Raisor v. Raisor,* 245 S.W.3d 807, 808–09 (Ky.App.2008), this Court relied upon the reasoning set forth in *Lawrence v. Risen,* but also confirmed that an appellant may not present an argument on appeal that was made under a different theory below:

> It is clear, in the proceedings below, Susan urged the court to accept the handwritten notes as the parties' entire agreement. Now, on appeal, she contends the notes are ambiguous and lack specificity. Consequently, we decline to further address Susan's claim, as she cannot "feed one can of worms to the trial judge and another to the appellate

---

1. Karen filed a notice of appeal from the August 10, 2011, and October 18, 2011, orders. She then filed an amended notice of appeal once the family court entered the November 21, 2011, order, in which it set aside the order entered in October.

court." *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976).

Susan's second argument is likewise unpreserved for our review. She contends the trial court's review was inconclusive because the parties failed to submit financial disclosure statements required by the 53rd Judicial Circuit's local rules. This argument is advanced for the first time on appeal, and we decline to address it. *Lawrence v. Risen,* 598 S.W.2d 474, 476 (Ky.App.1980). "The Court of Appeals is one of review and is not to be approached as a second opportunity to be heard as a trial court." *Id.*

█ In the present case, we agree with Tom that the arguments Karen has advanced in her appeal were never specifically raised at the family court level. In both her pretrial and post-trial filings, Karen argued that a coverture fraction should have been used to identify the marital and non-marital portions of Tom's pension. This request on Karen's part is in direct conflict with her argument on appeal that a coverture fraction should not have been used to calculate these amounts, but rather a subtraction method or "bright line" rule should have been used. Karen's "bright line" rule argument, which entails valuation of a pension plan at the time of the dissolution decree, is closer to her argument below, but she uses a different calculation in her appellate brief than she put forth below, which resulted in her claiming an increased share of Tom's pension. Accordingly, we must agree with Tom that Karen failed to preserve the specific arguments she raises on appeal by first raising them before the family court. Therefore, we decline to address the merits of Karen's arguments.

█ Even if we were to consider the merits of the appeal, we find no abuse of discretion in the family court's designation of Tom's pension as marital and non-marital, or in the award to Karen, based upon the factors the family court considered, including the length of time they were married while Tom earned pension benefits with GE prior to his retirement. *See Young v. Young,* 314 S.W.3d 306, 308 (Ky. App.2010), citing *Armstrong v. Armstrong,* 34 S.W.3d 83, 87 (Ky.App.2000) ("We review a trial court's determinations of value and division of marital assets for abuse of discretion.").

For the foregoing reasons, the final judgment of the Jefferson Family Court is affirmed.

ALL CONCUR.