RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0337-MR

JAMES ANDREW BEETS                                      APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANGELA JOHNSON, JUDGE
ACTION NO. 18-CI-500014

KIRA ELIZABETH BEETS                                      APPELLEE

AND

NO. 2022-CA-0344-MR

KIRA ELIZABETH BEETS                              CROSS-APPELLANT

v.

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANGELA JOHNSON, JUDGE
ACTION NO. 18-CI-500014

JAMES ANDREW BEETS                              CROSS-APPELLEE

** ** ** ** **

BEFORE:  DIXON,[1] GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE:  James Andrew Beets ("Andie") appeals orders of the Jefferson Circuit Court, Family Division entered on November 15, 2019, February 24, 2022, November 2, 2020, January 12, 2021, and August 30, 2021, and March 11, 2022.  Kira Elizabeth Beets ("Kira") cross-appeals the August 30, 2021 and March 11, 2022 orders.  After careful review, we affirm.

## BACKGROUND

The parties were married on January 20, 2007.  They are parents to two minor children.  Andie petitioned for the dissolution of the marriage on January 3, 2018.  Throughout the marriage, Andie was the higher-earning spouse and is employed full-time as a lead heating, ventilation, and air conditioning installer for Kentuckiana Comfort Center.  Although Kira did not work when the parties' children were younger, she is now employed full-time as the preschool director at Saint Andrews Academy.

Kira moved for temporary child support.  Based on the Kentucky child support guidelines, the family court set Andie's temporary child support

---

[1] Judge Donna Dixon concurred in the Opinion prior to her retirement effective November 20, 2023.  Release of this Opinion was delayed by administrative handling.

obligation at $755.56 per month. The court also entered a status quo order which required the parties to each pay one-half of the mortgage payment on the marital home and the electric, water, and trash bills associated with the property.

Kira later requested temporary maintenance and attorney fees. After a hearing, the court awarded Kira $850 per month in temporary maintenance. The court found, based on the parties' recent tax return, that Andie earned $66,505.50 and Kira earned $31,380.50. In considering the requirements of KRS[2] 403.200, the court found

> [Kira] lacks the sufficient resources to provide for her reasonable needs. [Kira] is employed and working fulltime but makes less than half of [Andie's] income. [Kira] has had to take on new debt, and [Andie] has deprived [Kira] of assets, such as failing to provide her a portion of the sales from various vehicles the parties' owned. Though [Andie] did use $5,000 of those proceeds to purchase the defective BMW, the [c]ourt believes the proceeds of the sale for the items exceeded $5,000 and [Kira] has not received any share of those funds. [Kira] is also maintaining old debt that the parties[] incurred, such as the credit cards that [Andie] removed from his name. Since [Andie] has removed [Kira] from dental and vision insurance, she is unable to afford the cost for herself and is currently without that insurance. For these reasons, the [c]ourt does not believe [Kira] can meet her reasonable needs.
>
> [Kira] is currently employed and though she is not employed in a lucrative field, there has been no evidence presented to doubt that the income [Kira] is earning through her employment is reasonable given [her]

---

[2]Kentucky Revised Statutes.

education, training, and the field. [Kira's] income is insufficient to provide for her reasonable needs.

It is apparent that she is not attempting to live beyond the standard of living the parties enjoyed during the marriage. [Kira] has been attempting to maintain the standard of living for her and the parties' children, though [Andie] has attempted to eschew financial responsibility at every turn.

[Andie] is employed and earns about $66,505 per year and also collects money from a rental property. [Andie] has deprived [Kira] of items the [parties] possessed during the marriage and failed to even discuss with her the proceeds of the sale. [Andie] has slighted [Kira] by providing her with an unreliable vehicle, in which she was to transport herself and their children. [Andie] has even removed his name from joint debts, leaving [Kira] financially responsible.

[Andie] claims to be in $12,000 of debt to his brother but is earning approximately $5,542 per month with $1,300 in monthly bills, $755.56 monthly child support obligation, $413 per month for mortgage payments, should be able to comfortably support himself and meet any monthly obligations. The [c]ourt does not believe that with the facts presented at the hearing that [Andie] is nearly as destitute as he is making himself out to be.

[Kira's] request of $850 per month appears to be reasonable to this [c]ourt given her financial resources, her reasonable needs, [Andie's] financial resources, and his ability to meet tat monthly obligation.

Record ("R.") at 266-68.

The family court also awarded Kira $5,000 of the $10,000 in attorney fees she requested. The court considered both parties' financial resources in making this award. The court characterized this case as "highly litigious" with

-4-

many issues relating to Andie's failure to pay his ordered obligations and Kira's inability to meet her own financial obligations. *Id.* at 269.

A final hearing was held on June 24, 2021. In its August 30, 2021 order, as amended by its March 11, 2022 order on the parties' post-judgment motions, the family court finally resolved all remaining issues between the parties.[3] In relevant part, the court awarded Kira permanent maintenance of $400 per month for two years or until either party died, Kira married, or she cohabitated with a paramour. The court also incorporated Andie's child support and maintenance arrearages, totaling $10,642.03, into the final order.

The court awarded Kira $6,000 of the more than $44,000 she requested in attorney fees. After "tediously review[ing]" the fees she requested, the court disagreed with Kira's contention that she would have expended only $2,000 on this litigation but for Andie's conduct. R. at 879-80. The court noted that Kira would have "a significant amount of financial resources" once its orders on the division of marital property went into effect. It also found Andie had already been ordered to pay the costs of the children's guardian *ad litem* ("GAL"), mediation, and his share to maintain the status quo of the marriage. *Id.* at 880.

---

[3] The family court entered a decree dissolving the marriage but reserving any remaining issues on December 8, 2021.

However, the court also noted that Andie's refusal to pay his monetary obligations during the pendency of the divorce had required additional litigation.

When dividing the parties' debts, the court found the following credit card balances marital in nature: (1) $2,527 on a Bank of America card in Andie's name; (2) $4,360 on a Citibank card in Andie's name; (3) $4,223 on a Bank of America card in Kira's name; and (4) $6,222 on a Discover card in Kira's name. The court assigned Andie the balances on the accounts in his name and equally divided the balances on the accounts in Kira's name. The court also assigned the $2,749 balance on a Capital One account in Kira's name to her because she incurred the debt after the parties separated.

The court also divided the real property owned by the parties. Relevant to this appeal, the court ordered the property at 3721 Center Street to be sold and for the proceeds to be divided equally. The court rejected Andie's claim that the house was his nonmarital property because it was a gift to him alone from his sister and brother-in-law. The court found "the 'purchase cost' of this property bought during the marriage from [Andie's] sister and brother-in-law, was the payment of then existing property tax liens, which liens were paid from marital funds during the parties' marriage and as a result this property is marital." *Id*. at 1021-22. The court awarded the property at 3115 Hartlage Court to Andie and

-6-

ordered him to refinance the home to remove Kira from the mortgage and to pay her $64,000, one-half of the value of the property.

This appeal and cross-appeal follow.

**STANDARD OF REVIEW**

In a dissolution proceeding, division of property consists of a three-step process: (1) the court classifies each piece of property as either marital or nonmarital; (2) the court then assigns each party his or her nonmarital property; and (3) finally, the court equitably divides the marital property between the parties. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006) (footnotes omitted). The determination of whether the property is marital or nonmarital in nature is reviewed in two tiers. *Id.* at 6. We review a family court's factual findings for clear error but review the ultimate determination of the nature of the property *de novo*. *Id.* We review the court's division of marital property and debt for abuse of discretion. *Id.*; *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014) (citation omitted).

Awards of maintenance are within the "sound and broad discretion" of the family court. *Naramore v. Naramore*, 611 S.W.3d 281, 286 (Ky. App. 2020) (citation omitted). Where the award is supported by substantial evidence, we will not substitute our judgment for that of the family court. *Bickel v. Bickel*, 95 S.W.3d 925, 928 (Ky. App. 2002) (footnote omitted). We also review a family

court's award of attorney fees under KRS 403.220 for abuse of discretion. *Bootes v. Bootes*, 470 S.W.3d 351, 356 (Ky. App. 2015) (citation omitted).

We will not disturb findings of fact which are supported by substantial evidence in the record. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted).

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.

*Id*. (internal quotation marks and footnotes omitted).

## ANALYSIS

On appeal, Andie argues: (1) the family court abused its discretion by failing to consider his ability to meet his own needs while also paying maintenance under KRS 403.200(2)(f); (2) the family court erred by failing to award him 3721 Center Street as his nonmarital property; (3) the court's equal division of the equity in 3115 Hartlage Court was an abuse of discretion; (4) the court abused its discretion when dividing the parties' credit card debt; and (5) the court abused its discretion by awarding Kira attorney fees.

First, Andie argues the family court failed to consider his ability to meet his own needs while also paying maintenance when calculating his temporary

-8-

and permanent maintenance obligations. It is undisputed that Kira remarried on April 12, 2022, and, for this reason, Andie's maintenance obligation was terminated. Because the decree was not made final until March 11, 2022, Andie never made a permanent maintenance payment. Therefore, any argument regarding his permanent obligation is now moot. *See Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) (citation omitted).

We are left only to consider whether the family court abused its discretion in awarding Kira temporary maintenance. A family court may award a party temporary maintenance during the pendency of a dissolution action. KRS 403.160. Temporary maintenance is meant to preserve the status quo of the parties while the divorce is pending. *Horvath v. Horvath*, 250 S.W.3d 316, 318 (Ky. 2008). Temporary maintenance orders are interlocutory and, as such, are not reviewable. *Calloway v. Calloway*, 832 S.W.2d 890, 894 (Ky. App. 1992) (citation omitted). Maintenance arrearages are reviewable only when they are incorporated into the decree of dissolution. *Id.* (citation omitted). Here, we may review Andie's temporary obligation because the family court amended its decree to incorporate his maintenance arrearage.

When determining the amount and duration of a party's maintenance obligation, the family court must consider "all relevant factors" but is not required to delineate every factor in its decision. *Normandin v. Normandin*, 634 S.W.3d

589, 603 (Ky. 2020) (footnote omitted). These factors include "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." KRS 403.200(2)(f).[4]

Andie argues he was unable to both support himself and meet his temporary maintenance obligation because of his other financial obligations during the pendency of the divorce. He specifically cites his temporary child support obligation, and his half of the mortgage on the marital home and the associated utility bills as making his maintenance obligation unreasonable. The family court also ordered him to pay the costs of reunification therapy for himself and the parties' minor children, the children's GAL fees, and the costs of mediation. Andie alleges, that after these court-ordered obligations, he was unable to pay his own expenses and was forced to rely on the assistance of family and friends.

In its December 3, 2018 order on temporary maintenance, the family court made extensive findings on the parties' financial situations. Regarding Andie's alleged inability to both meet his own needs and pay maintenance, the court was unconvinced. The court found Andie earned $5,542 per month. He reported $1,300 in monthly expenses and was obligated to pay $755.56 per month

---

[4] KRS 403.200 mandates a two-step process for maintenance awards. Andie does not contest that Kira is entitled to maintenance under KRS 403.200(1), nor does he raise any specific arguments related to the factors listed in KRS 403.200(2)(a)-(e).

in child support and $413 per month toward to mortgage on the marital home.[5]

Taking into account his $850 per month temporary maintenance obligation, Andie was left with more than $2,200 in excess income. Andie does not dispute the accuracy of these amounts. Given these facts, the family court did not abuse its discretion in finding Andie was able to support himself while also paying maintenance under KRS 403.200(2)(f).

Furthermore, the other obligations Andie alleges made him unable to meet his own needs arose after temporary maintenance was awarded. The court appointed a GAL for the children on March 8, 2019. The parties were ordered to attend mediation on May 23, 2019, and February 11, 2020.[6] On November 2, 2020, Andie was ordered to participate in reunification therapy with the children. Andie claims to have filed motions to reduce some of his financial obligations. However, he does not claim to have requested modification of his temporary maintenance obligation after he was ordered to pay these other costs. Because Andie never requested a reduction in his temporary maintenance obligation based on subsequent expenses, the family court was not given the opportunity to consider this argument. Failure to first raise an argument before the family court is fatal to

---

[5] The court's order does not specify the cost of the marital home's utilities. However, Andie reported his portion of the mortgage and utilities collectively amounted to approximately $600 per month. Given his excess income of more than $2,200 after payment of obligations and expenses, this omission does not amount to an abuse of discretion.

[6] In the February 11, 2020 order, Andie agreed to pay the full cost of mediation.

the issue on appeal. *See Triplett v. Triplett*, 414 S.W.3d 11, 15 (Ky. App. 2013) (citation omitted).

Second, Andie contests the family court's classification of 3721 Center Street as marital property. The house was previously owned by Andie's sister and brother-in-law. It is uncontroverted that the parties gained ownership of the home during the marriage by using marital funds to pay off $9,500 in property tax liens against it. Andie claims the home was a gift to him from his sister and brother-in-law. He further argues that the home has a fair market value of $30,000, giving him a 68.33% non-marital interest in the property.

Property acquired during the marriage is presumed to be marital in nature. KRS 403.190(3). The party claiming such property, or an interest therein, is nonmarital bears the burden of overcoming the presumption. *Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (footnote omitted). When a party claims the property is a nonmarital gift, the court must consider

> the source of the money with which the "gift" was purchased, the intent of the donor at that time as to intended use of the property, status of the marriage relationship at the time of the transfer, and whether there was any valid agreement that the transferred property was to be excluded from the marital property.

*O'Neill v. O'Neill*, 600 S.W.2d 493, 495 (Ky. App. 1980).

Here, it is uncontroverted that the parties were married when the Center Street property was purchased, and marital funds were used to pay off the

-12-

tax liens. Andie does not allege the parties entered into any agreement excluding the property from the marital estate. As to his claim that his sister and brother-in-law intended for the home to be a gift to him, neither individual testified at trial. Other than his own testimony, Andie cites no evidence in the record to show their intent to transfer the property to him as a gift. The court was unconvinced by his testimony. This is not an abuse of discretion. Andie's attempt to claim 68.33% non-marital interest in the property fails on the same grounds.

Andie next argues the family court abused its discretion when it divided the parties' credit card debt. There is no statutory presumption that debts incurred during a marriage are marital or non-marital in nature, nor is there a presumption they be divided equally or in the same proportion as marital property. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 522-23 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018) (citations omitted). When dividing debts, courts have traditionally considered factors including which party received benefits from the debt, the extent of participation of the parties in incurring the debts, whether the debt was used to purchase marital property, whether the debt was incurred to support the family, and the economic circumstances of the parties and their abilities to assume the debts. *Id.* at 523 (citations omitted).

Andie complains that, despite his financial hardship, he has been required to pay both the marital debt in his name and half of the marital debt in Kira's name. The debts were incurred during the marriage, regardless of whose name is now on the account. The family court considered the *Neidlinger* factors and determined an equitable allocation of the debt. While Andie alleges his own financial hardship, the court was unconvinced. The court found Kira struggled financially after the parties separated. Andie earns nearly twice Kira's salary. Based on the facts, the family court did not abuse its discretion in allocating the parties' marital debts.

Andie next claims the family court was indifferent to his ability to pay Kira her $64,000 interest in 3115 Hartlage Court when it ordered him to refinance the property and remove Kira from the mortgage within sixty days of entry of the order. However, on January 3, 2023, the court entered an agreed order giving Andie full ownership of 3115 Hartlage Court and requiring him to pay $40,000. R. at 1378. Andie's claim of error is mooted by this post-decree agreement.

Next, Andie claims the family court abused its discretion by awarding Kira "all of her attorney's fees and costs." Andie was first ordered to pay $5,000 of Kira's $10,000 in requested attorney fees because of Kira's financial struggles and his own actions during the pendency of the divorce. The court then awarded her $6,000 of the $44,033.43 in attorney fees she requested in its final order. It is

disingenuous to characterize this as an award of all her attorney fees. In fact, it is only a small portion of what she incurred and requested.

The family court may award a party a reasonable amount of attorney fees under KRS 403.220. The purpose of the statute is to ensure fairness in domestic relations proceedings. *Seeger v. Lanham*, 542 S.W.3d 286, 292 (Ky. 2018) (citation omitted). The statute requires the family court to consider the financial resources of the parties but does not require the court to find a disparity exists to award fees and costs. *Smith*, 556 S.W.3d at 555. Furthermore, the family court "is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Weber v. Lambe*, 513 S.W.3d 912, 919 (Ky. 2017) (citation omitted).

Here, the court thoroughly reviewed both the parties' financial situations and the fees submitted by Kira. Although the court noted Kira would receive significant resources because of its final order, the court also noted that Andie's conduct contributed to the costs of litigation. Andie repeats his claim that he was unable to support himself after being ordered to pay attorney fees. However, he again cites nothing in the record other than his own testimony to support his argument. The court acted within its broad discretion when weighing the evidence and awarding Kira attorney fees.

Finally, Kira does not raise any separate issues on appeal and describes her cross-appeal as protective on the issue of attorney fees. She vaguely claims she is entitled to "substantially more" fees but does not cite any authority to support her assertion. We decline to address this claim because it is not the responsibility of an appellate court to develop a party's arguments. *See Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 379 (Ky. App. 2018).

## **CONCLUSION**

Based on the foregoing, the orders of the Jefferson Circuit Court, Family Division are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Louis I. Waterman
Spencer J. Brooks
Prospect, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT:

Katie M. Brophy
Louisville, Kentucky